## In re FOLEY. WITHERS v. WHITE. In re E. Y. FOLEY, Inc.

(Circuit Court of Appeals, Ninth Circuit. March 3, 1925.)

Nos. 4259, 4260, 4287, 4288.

**1. Bankruptcy ⬳96—Adjudication that individual bankrupt was owner of bankrupt corporation without according objection creditor hearing held error.**

Action of bankruptcy court, when confirming referee's order appointing same trustee for estates of corporation and individual, in adjudging that individual was sole owner of corporation, pursuant·to which referee entered order of consolidation without according objecting creditor a hearing on question of identity of ownership, *held* error.

**2. Bankruptcy ⬳447—Order consolidating estates without according creditor a hearing not reversed, but creditors permitted to controvert claims of other creditors in such proceeding.**

Where bankruptcy court confirmed order of referee consolidating estate of corporation and estate of individual after adjudicating that individual was sole owner of corporation, without according objecting creditor a hearing, the Circuit Court of Appeals, on petition to revise order under Bankruptcy Act, July 1, 1898, § 24b (Comp. St. § 9608), will not reverse the order, but will permit creditors to present their claims and to contest or controvert claims of other creditors in consolidated proceeding.

Ross, Circuit Judge, dissenting in part.

Petitions to Review, in Matter of Law, Orders of the District Court of the United States for the Northern Division of the Southern District of California.

In the matter of E. Y. Foley, bankrupt, and in the matter of E. Y. Foley, Inc., bankrupt. On separate petitions, under Bankruptcy Act July 1, 1898, § 24b (Comp. St. § 9608), of F. M. Withers and of Withers Bros., to revise orders of District Court (4 F.[2d] 152) confirming order of referee appointing William E. White, trustee of the estate of E. Y. Foley, bankrupt,·order confirming order of referee appointing William

E. White, trustee of the estate of E. Y. Foley, Inc., and order confirming referee's order consolidating the estates of E. Y. Foley, bankrupt, and E. Y. Foley, Inc., bankrupt, and providing for a dividend of 5 per cent. of the assets of the bankrupt E. Y. Foley to be paid to the creditors of the two bankrupt estates. Order of consolidation affirmed, as modified.

See, also, 1 F.(2d) 568.

I. Henry Harris, of Los Angeles, Cal., for petitioner.

Newton A. Johnson and Theodore M. Stuart, both of Fresno, Cal., for respondent.

Before ROSS, HUNT, and RUDKIN, Circuit Judges.

ROSS, Circuit Judge (in part dissenting). These four matters were consolidated and heard together in the court below and have been argued together here. The first is a petition for the revision of an order of the District Judge confirming the order of the referee in bankruptcy appointing William E. White trustee of the estate of E. Y. Foley, bankrupt. (D. C.) 1 F.(2d) 568. The second is.a petition for the revision of an order of the judge confirming the order of the referee appointing White trustee of the estate of E. Y. Foley, Inc., bankrupt. (D. C.) 1 F.(2d) 568. The third and fourth are petitions for the revision of the order made by the judge confirming an order made by the referee consolidating the estate of E. Y. Foley, bankrupt, and the estate of E. Y. Foley, Inc., bankrupt, and providing for a dividend of 5 per cent. of the assets of the bankrupt E. Y. Foley, Inc., to be paid to the creditors of the two bankrupt estates. (D. C.) 4 F.(2d) 152. The objection to the compensation of $10,000 allowed to the receiver of the two estates, also made by the last-mentioned order of the court, has been here waived in the brief of the petitioner.

We are of the opinion that the record shows no just ground of complaint, either over the action of the court below in holding that the receiver of a bankrupt's estate was not thereby disqualified from being selected by the creditors as trustee of the estate, or in holding that there was no sufficient showing of any improper action on the part of any of the parties concerned as to the qualifications or the propriety of the appointment of Mr. William E. White to those positions.

The real question in the case is whether there is such a conflict of interests between the creditors of the individual, Foley, and those of the Foley corporation, as to make it improper to have consolidated the two es-

tates and to have appointed the same person to serve as trustee in the two.

The court below took this view according to its opinion: "I am of the view that the two estates are of the same ownership—that the property of Foley and of Foley, Incorporated, is to be considered as one sum of assets subject to the claims of all creditors, and for that reason I think that a consolidation of the two estates can appropriately be made."

The record shows that Foley during and prior to the year 1923 was extensively engaged in the business of buying, handling, and shipping fruit at and in the vicinity of Fresno, and in the early part of that year had incurred indebtedness to various fruit growers, and fruit brokers and materialmen to the amount of more then $1,000,000, which was largely in excess of his assets. It appears that 98 per cent. of his creditors, evidently having confidence in his ability to weather his financial difficulties and for their own expected benefit, for the purpose and with the hope of re-establishing his business on a sound basis, entered into and signed this written contract in the month of May, 1923:

"Whereas, it is proposed to organize a corporation under the name of E. Y. Foley, Inc., with a capital stock of $2,500,000. Seven per cent. cumulative preferred stock, subject to call at 105, and 50,000 shares of nonpar value stock for the purpose of taking over all of the assets of E. Y. Foley of Fresno, California, and

"Whereas, it is proposed that the creditors of said E. Y. Foley accept twenty-five per cent. (25%) in notes of said corporation for said amounts, payable February 1, 1924, and seventy-five per cent. (75%) of preferred stock of such corporation when organized or all preferred stocks in settlement of the respective claims of creditors:

"We, the undersigned, creditors of E. Y. Foley of Fresno, California, for the amount set opposite our respective names, in consideration of the insolvency of the said E. Y. Foley and of the payment to us of

"Twenty-five per cent. (25%) of the amount of our claims in promissory notes of the corporation payable as above stated.

"Seventy-five per cent. (75%) of our claims in preferred capital stock of the corporation when organized, or in promissory notes of E. Y. Foley, payable not less than two years from the date hereof and secured by preferred stock of said corporation at par as may be desired by the undersigned, said election to be indicated in writing thirty days after the organization of said corporation.

"do hereby jointly and severally agree with said E. Y. Foley and with each other, and with all creditors of said E. Y. Foley, signing like counterpart agreements, that we will and do hereby accept of and from said E. Y. Foley, in full payment and liquidation of our respective claims against the said E. Y. Foley, the settlement provided for herein;

"It being understood and agreed that such payments shall be made and said stock delivered within thirty days after the completion of the organization of said corporation.

"It being further understood and agreed that said cash and stock when delivered shall be in full settlement, compromise and discharge of our respective claims against E. Y. Foley, and that the said E. Y. Foley shall thereafter be released and discharged from all further liability thereon or with respect thereto, excepting as to his liability upon his personal promissory notes taken in accordance with this agreement.

"May ——, 1923.

"Name of Creditor.           Amount."

By another contract, according to the stipulation of the parties the "'grower creditors' were given the option of receiving 25 per cent. of the amount of their claims in cash, or in promissory notes of the corporation to be organized, while the other creditors were required to accept said 25 per cent. in promissory notes of the corporation, and were not to receive any cash."

The record shows that the petitioner did not sign either of the contracts, but that they were executed by Foley and 98 per cent. of his creditors, after which the E. Y. Foley corporation was formed and organized under and pursuant to the laws of the state of Delaware with a total authorized capital stock of 75,000 shares, consisting of 50,000 common, of no par value, and 25,000 shares of preferred stock of the par value of $100 each; that subsequently application was made by it to the Commissioner of Corporations of the State of California for permission to issue the 50,000 shares of the common stock and 22,031 of the preferred stock of that corporation to Foley in exchange for the transfer by him to the Delaware corporation of all of his assets. The application to the California Corporation Commissioner, after stating the fact of its incorporation, organization, and the names and addresses of its directors and other officers, and annexing thereto a copy of the

resolution adopted by its board of directors relating to the issue and sale of its capital stock, stated, among other things:

· (1) That the applicant has no assets or liabilities.

(2) That the applicant was organized for the purpose of acquiring the properties, business, and good will of E. Y. Foley, which properties are to be conveyed to the applicant "in exchange for preferred capital stock of applicant and of the net worth of two million two hundred three thousand one hundred thirty dollars ($2,203,130.00) over and above incumbrances against the same; that in addition to said purposes applicant is to acquire from said E. Y. Foley the business and the good will thereof. In that connection applicant shows that E. Y. Foley has developed a large business in the sale of fruit and raisins throughout the world, and in the year 1922 handled approximately five thousand (5,000) cars of fresh fruits and grapes and approximately two hundred fifty (250) cars of raisins, the same amounting in volume to about one-eighth of all of the deciduous fruits produced in the state of California in the year 1922 and to about one-fourth of such fruits produced in the San Joaquin Valley. The volume of business transacted by E. Y. Foley in 1922 was approximately eleven million dollars ($11,000,000.00). * * *

"No part of applicant's securities is to be sold to the public generally, but all that is herein prayed to be issued is to be so issued to said E. Y. Foley in exchange for said assets, business and good will.

"E. Y. Foley is the president of the new corporation and the other directors of applicant are either experienced fruit men or bankers. It is proposed that applicant succeed to the well-established business of E. Y. Foley."

(3) The prayer of the applicant that he be granted a permit to issue 22,031 shares of its preferred capital stock and 50,000 shares of its common stock in exchange for the properties, business, and good will of Foley.

The record shows that the permit so applied for was granted by the California Corporation Commissioner, after which Foley conveyed to the Delaware corporation, by appropriate conveyances, all of his assets, after which all of the business in question was transacted by and in the name of that corporation. It appears that while the business was conducted by Foley individually the petitioner secured two judgments against him which became liens upon his real property, and that on August 3, 1923, the board of directors of the Foley corporation made an adjustment with the petitioner regarding the claims he had against Foley individually based upon those judgments, in pursuance of which the board of directors of the Foley corporation adopted on the day last mentioned this resolution:

"Resolved, that this corporation, E. Y. Foley, Inc., does hereby guaranty to pay to the extent of $21,500.00 the principal amount of two certain judgments heretofore made and entered by the superior court of the state of California in and for the county of Fresno, in favor of F. M. Withers and C. H. Withers and against E. Y. Foley in actions No. 29900 and No. 30471, payment of said sum of $21,500.00 to be made on condition that the balance of said judgments, as well as all other obligations of every kind and character in favor of said F. M. Withers and said C. H. Withers, or their assigns, and against E. Y. Foley, shall be satisfied and discharged by the delivery, or agreement to deliver, unto the holder of said judgments or obligations of preferred stock of E. Y. Foley, Inc., to the amount of such balance; and

"Be it further resolved that the president and secretary of this corporation be and they are hereby authorized and empowered to make, execute and deliver on behalf of this corporation any and all instruments which may be necessary or required in their judgment to fully carry out this resolution."

In pursuance of that resolution the petitioner executed and delivered to the Foley corporation a satisfaction and release of one of his judgments, but not of the other. The petitioner was not one of the so-called "grower creditors." Subsequent to the taking over of all of the assets of the individual Foley, the Foley corporation, in the continuance of the business, incurred an indebtedness of about $600,000; but soon found that it could proceed no further and the two involuntary proceedings in bankruptcy in question resulted.

It is obvious, I think, that the rights of all of the creditors of the two involuntary bankrupts are by no means the same or similar, for surely when the E. Y. Foley corporation received from the California Corporation Commissioner a permit to transact its business and dispose of its stock in this state upon the assurance that it was without any indebtedness and was the owner of property of the value of $2,203,100.00, and in pursuance of that assurance of public record, proceeded to incur indebtedness of some $600,000, those creditors cannot be justly held to have given the Foley corpora-

tion credit, wholly, if at all, upon property that the individual Foley formerly owned—particularly swamped as it was by Foley's individual debts. No more, I think, can a judgment creditor of the individual Foley who had secured a lien upon his individual property and who, according to the record, in part released such lien upon the agreement of the Foley corporation to issue to him its note for 25 per cent. of such claim and its preferred stock for the balance of it, be, upon the breach of such agreement, justly held to occupy the same position as any of the creditors of the individual Foley. In brief, it seems to me that there may be very serious conflicts between the creditors of the individual Foley and the Foley corporation, and that, therefore, the two estates should not have been consolidated by the court below, and that the same person should not represent the two as trustee.

I am of the opinion, however, that such claims of creditors as have been filed under and in pursuance of the order of consolidation made by the court should, in the proceedings hereafter to be had, be regarded as being filed in the appropriate bankrupt estate, and that the evidence that has already been introduced therein may, by stipulation of the attorneys of the respective parties, be considered in the appropriate estate without the necessity and otherwise necessarily incidental expense of taking it over again.

The order of consolidation should be, in my opinion, reversed, and the cases remanded for further proceedings in accordance with the views above expressed.

HUNT and RUDKIN, Circuit Judges (concurring in part). If there is such conflict of interest between creditors of the individual and creditors of the corporation as to require a separate administration of each estate, it would seem that orders appointing the same person trustee of both estates should not be affirmed; but, in the view we take of the case, that fact becomes immaterial. We agree with Judge ROSS that the court below has prejudged the rights of creditors without a hearing. Thus, in the opinion confirming the order approving the appointment of a trustee, the court said: "I am of the view that the two estates are of the same ownership—that the property of Foley and of Foley, Incorporated, is to be considered as one sum of assets subject to the claims of all creditors, and for that reason I think that a consolidation of the two estates can appropriately be made. The business was always the business of E. Y. Foley, while the operations were being carried under his individual name as well as afterwards when conducted by E. Y. Foley, Incorporated, with Foley as president."

[1, 2] This conclusion may or may not be correct; but that question was not before the court, and the rights of creditors should not be foreclosed or determined by any such order. Acting upon the suggestion of the court, the referee entered an order wherein it was decreed that the two proceedings involve the same identical assets and liabilities; that for the purpose of administration they should be deemed consolidated in one proceeding; that all of the assets of both estates should be consolidated; that all liabilities of both estates should be consolidated; that all claims which have been duly allowed or which may hereafter be duly allowed should be considered as claims against the consolidated estate; and that all acts of the trustee, whether done under the proceeding in the one estate or in the other, should be considered as done and performed under the consolidated proceeding. This order the court below has affirmed. 4 F.(2d) 152. It will thus be seen that the referee and the court have determined in advance that the assets of the two estates are of the same ownership, and that creditors of one bankrupt are creditors of the other. It seems manifest to us that no such adjudication should be made without first giving the creditors their day in court.

However, we do not think that it is necessary, or that it would be the part of wisdom to undo all that has been done. The appellants and all other creditors may present their claims to the trustee of the consolidated estate; they may contest or controvert the claims of any other creditor in that proceeding, and their rights can be as fully protected as if the two estates were divorced for the purposes of administration. Any other disposition of the case will necessitate a separate administration of each estate, to be followed, perhaps, by protracted litigation between the two trustees and the dissipation of assets which should go to the creditors. We are satisfied that the rights of the appellants and of all other creditors can be amply protected by simply modifying the order of consolidation in such manner as to leave the rights of creditors open so that any creditor may assert such claims as he may desire and may controvert and contest the claims of any other creditor, if so advised.

The order of consolidation will be modified in accordance herewith and, as thus modified, the order is affirmed.